**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROLINE R. HOMAN,<br><br>                    Plaintiff,<br><br>v.<br><br>COLONIAL PENN LIFE INSURANCE<br>COMPANY, et al.,<br><br>                    Defendant. | Case No. 1:25-cv-00296 JLT SAB<br><br>ORDER ADOPTING FINDINGS AND<br>RECOMMENDATIONS IN PART AND<br>GRANTING MOTION TO REMAND IN<br>PART<br><br>(Docs. 10, 30) |

Caroline Homan alleges Colonial Penn Life Insurance Company violated California statutes that protect life insurance policy holders and beneficiaries. She is pursuing equitable claims for relief under state law. She originally filed this case in state court. Colonial Penn removed the case to this court, and Ms. Homan moves to remand. As explained in this order, the Court lacks subject matter jurisdiction to consider her request for injunctive relief, but it does have subject matter jurisdiction over her remaining requests for relief, including her request for restitution. The Court also has equitable jurisdiction over that second category of equitable claims, given Colonial Penn's decision to waive any argument about the adequacy of other remedies at law.

Rather than dismissing the request for injunctive relief, the Court will remand that request to state court. The remainder of Ms. Homan's claims will proceed in this Court unless she or

1

Colonial Penn shows, in a noticed motion, that the Court should ender a stay or remand this matter under a recognized abstention doctrine.

**BACKGROUND**

Several years ago, in 2012, the California Legislature made changes to the state's Insurance Code. *See McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 283 (2021) (citing Cal. Ins. Code §§ 10113.71 and 10113.72). Its aim was to prevent people from inadvertently losing life insurance benefits if they did not pay premiums on time. *Id.* These amendments did not expressly clarify, however, whether they applied retroactively. *Id.* Many insurance companies determined that the changes were not retroactive based in part on guidance from the California Department of Insurance, so they did not to comply with the newly enacted provisions for policies that were already in place. *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1188 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2852 (2025). In 2021, however, the California Supreme Court held "that sections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued." *McHugh*, 12 Cal. 5th at 220.

The consequence, as the Ninth Circuit has described it, was "an onslaught of suits" based on alleged noncompliance with the 2012 amendments. *Small*, 122 F.4th at 1189. In many of these cases, the plaintiffs pursued their claims on behalf of proposed classes. For example, in 2020, a woman named Thurma Kelley filed a complaint in a California federal district court against Colonial Penn, the defendant here. (*See* Doc. 1, Case No. 20-3348, C.D. Cal. Apr. 9, 2020.) She alleged that she had purchased a policy from Colonial Penn and had paid premiums for many years, but had missed one payment in 2017, leading Colonial Penn to conclude that her policy had lapsed. (*Id.* at 9–11.) She pursued claims on behalf of a proposed class of other "owners or beneficiaries of Colonial Penn's individual life insurance policies" whose policies had already or would later lapse in similar circumstances. (*Id.* at 12.)

Over the years, federal district courts in California adjudicated many similar cases. *See Small*, 122 F.4th at 1191–96 & nn.2–3. A split developed. Some district courts interpreted mandatory language within the Insurance Code as essentially preventing a policy from lapsing if

the insurer did not comply with the statute's notice and other provisions. *See id.* at 1192–93 & n.2 (collecting authority). Under this interpretation of the statute, a plaintiff could pursue a claim against an insurance company based solely on the allegation that the insurer had violated the statute. *See id.* at 1192–93. Other district courts concluded that a plaintiff must also allege that the violation caused harm, for example because the plaintiff would have continued to pay premiums and thus retained the policy if the insurer had complied with the amended Insurance Code provisions. *See id.* at 1193.

This split was outstanding at the time Ms. Kelley filed her case against Colonial Penn in federal district court, but while her case was pending, the Ninth Circuit resolved it. (*See* Doc. 124, Case No. 20-3348, C.D. Cal. filed May 6, 2025.) The Circuit held that a plaintiff could not state a claim against an insurance company based on violations of the amended Insurance Code provisions without pleading that those violations caused damages. *See Small*, 122 F.4th at 1197. Building on this holding, the Circuit also concluded that a class could not be certified under Rule 23(b)(3), at least not in the case before it. Disputes about causation and damages would be individualized and would predominate over any common questions. *Id.* at 1199–1200. The Circuit's opinion ultimately led to a judgment in favor of Colonial Penn in Ms. Kelley's case. (*See* Doc. 125, Case No. 20-3348, C.D. Cal. filed May 6, 2025.) She could not prove Colonial Penn's violations caused her damages because she had found a cheaper policy, and she could not represent a class of Colonial Penn policy holders. (*See id.* at 5–6.)

The Ninth Circuit's holding in *Small* is controlling as a practical matter in federal district courts within California. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 745 F. Supp. 3d 869, 892 n.7 (N.D. Cal. 2024). It is not controlling in the state's own courts. *See People v. Richardson*, 108 Cal. App. 5th 1203, 1213 (2025), *review denied* (Apr. 30, 2025). The California Supreme Court has not decided what a plaintiff must plead and prove to win in a case based on the amended Insurance Code provisions, nor whether such a claim can be asserted on a behalf of a class. This mismatch gives policy holders (and the attorneys who represent them) a clear incentive to avoid federal district courts. By the same token, it gives insurance companies (and the attorneys who represent them) a clear incentive to avoid state courts.

This action is a case in point.  It began a few months after the Ninth Circuit issued its opinion in *Small*, when the attorneys who represented Ms. Kelley in her case against Colonial Penn filed a new complaint on behalf of a different Colonial Penn policy holder, Ms. Homan, and a new proposed class, this time in state superior court.  (*See* Doc. 1 at 17–33.)  Ms. Homan alleges her late husband purchased a life insurance policy from Colonial Penn, she alleges she is the sole beneficiary, and she alleges he made payments for more than twenty years before the policy lapsed inadvertently due to unpaid premiums while her husband was gravely ill.  (*Id.* at 25–26.)  Her complaint includes one claim under the state's Unfair Competition Law (i.e., the "UCL"), and she requests class certification, an injunction, restitution, and other equitable relief, but not damages or any other "legal" remedy.  (*Id.* at 31.)

Colonial Penn removed the case to this court based on its allegations that (1) it is a citizen of a different state than Ms. Homan, (2) the case puts more than $5 million in controversy, and (3) there are more than one hundred people in the proposed class, citing jurisdictional rules added by the Class Action Fairness Act of 2005, i.e., "CAFA."  (*Id.* at 3–8 (citing 28 U.S.C. § 1332(d).)  Ms. Homan now moves to remand the case to state court based on a lack of jurisdiction.  (Doc. 10.)

That motion and Colonial Penn's response focus largely on a second split that divided California's federal district courts at the time the motion was filed.  Some courts had concluded that they should remand an action that, like this one, involves only equitable relief and no allegation that the plaintiffs lack an adequate remedy at law.  *See generally, e.g.*, *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869 (N.D. Cal. 2021).  The Ninth Circuit had in fact held that federal courts "must apply traditional equitable principles before awarding restitution" under the California Unfair Competition Law, including the rule that a plaintiff must plead and prove that legal remedies were inadequate.  *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834, 841–44 (9th Cir. 2020).  It had even described this rule as raising "a threshold jurisdictional question."  *Id.* at 839.  But the Circuit had also said that "[e]quitable jurisdiction is distinct from subject matter jurisdiction," even though "both are required for a federal court to hear the merits of an equitable claim."  *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022).  This

4

distinction had led a different group of federal district courts to reject motions to remand based on arguments about equitable jurisdiction. *See, e.g.*, *Fox v. Genworth Life & Annuity Ins. Co.*, No. 24-01001, 2025 WL 2402764, at *2 (E.D. Cal. Aug. 19, 2025) (collecting authority).

The Ninth Circuit resolved this split while this case and the present motion to remand have been pending. *See generally Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907 (9th Cir. 2025). It confirmed that district courts have authority to remand cases based on a lack of equitable jurisdiction, but only after giving the defendant a chance to waive any objection to the plaintiffs' failure to allege that they lacked adequate relief at law. *See id.* at 909. In short, "if a plaintiff files a lawsuit in state court seeking only equitable relief and the case is properly removed to federal court, a defendant can defeat remand on equitable jurisdiction grounds by waiving the adequate-remedy-at-law issue." *Id.* at 918.

The Court referred Ms. Homan's motion to the assigned magistrate judge, who permitted the parties to file supplemental briefs addressing the Ninth Circuit's opinion in *Ruiz*. (*See* Docs. 22, 23, 28, 29, 30.) Ms. Homan argued that the holding in *Ruiz* was limited to claims for restitution and did not apply to cases involving other types of equitable relief, such as an injunction. (Doc. 28 at 7–12.) In her assessment, this Court also has no jurisdiction to award the injunctive relief she seeks because she is not personally likely to suffer the same injury in the future, now that the policy has lapsed. (*See id.* at 10.) Ms. Homan next argued that a district court "is not obligated to accept" a defendant's waiver of the equitable jurisdiction issue, and she urged the magistrate judge not to accept Colonial Penn's waiver. (*Id.* at 12–15.) Finally, based on her argument that a state court—unlike a federal court—could issue the injunction she seeks, she proposed an alternative: split off and remand only her request for an injunction. (*Id.* at 15–20.) But she reiterated that it would be more efficient, fairer, and more convenient to litigate the entire action in the state court, and she argued that an order remanding the whole case would better respect the comity between federal and state courts. (*See id.* at 20–21.)

The magistrate judge prepared Findings and Recommendations, which recommend denying the motion to remand. (Doc. 30.) In short, the magistrate judge disagreed that the Circuit's holding in *Ruiz* is limited to requests for restitution but agreed that federal district courts

likely have discretion under *Ruiz* to accept or reject a defendant's waiver of arguments based on the court's equitable jurisdiction. (*See* Doc. 8–10.) The magistrate judge was not persuaded, however, that it would be appropriate to reject Colonial Penn's waiver or to split off and remand only her request for injunctive relief, among other reasons because doing so would lead to a duplication of effort. (*See id.* at 10–19 (citing *Cabral v. Supple, LLC*, No. 12-00085, 2016 WL 1180143 (C.D. Cal. Mar. 24, 2016)).) On the bottom line, the magistrate judge concluded that if a plaintiff in Ms. Homan's situation wishes to obtain injunctive relief on behalf of a proposed class "that is not available in federal court, she must narrow her class to take it out of CAFA's purview." (*Id.* (quoting *Cabral*, 2016 WL 1180143, at *4).) "Otherwise she must proceed in federal court without the prospect of obtaining an injunction." (*Id.* (quoting *Cabral*, 2016 WL 1180143, at *4).)

Ms. Homan objected to the Findings and Recommendations. (Doc. 31.) She contends the magistrate judge erred in three ways: (1) by concluding that this Court has jurisdiction over her claim under the UCL, (2) by "treating the Court's CAFA subject-matter jurisdiction as dispositive," and (3) "in concluding that [the Court] should accept, rather than reject, Defendant's waiver of the adequate-legal-remedy defense." (*Id.* at 3.) Colonial Penn argues in response that Ms. Homan's motion and this lawsuit in general are transparently a "gambit" by the attorneys who represent her to secure "a potentially lucrative class wide settlement" and to avoid binding Ninth Circuit precedent. (Doc. 33 at 6–7.) It urges the Court to adopt the Findings and Recommendations and to retain jurisdiction of the whole case. The Court has accordingly renewed the matter de novo.

## SUBJECT MATTER JURISDICTION

The Court begins, as it must, by outlining the boundaries of its subject matter jurisdiction. *See Polo v. Innovations Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). The jurisdictional question in this case has several parts. Removal jurisdiction is the first. Under federal statutory law, a defendant can remove certain civil actions from a state court to a federal court under 28 U.S.C. § 1441(a). There are limits to a court's removal jurisdiction, *see, e.g., id.* § 1445, and the federal removal statutes impose a number of procedural obligations on removing defendants, *see,*

*e.g.*, *id.* § 1446, but there is no reason to doubt that this case was removable and that Colonial Penn complied with the relevant procedural rules.  The only uncertainty is whether this court would have had "original jurisdiction" over the case at the time it was field, as § 1441(a) requires.  That is the second part of the jurisdictional question.

Original jurisdiction, like removal jurisdiction, is largely a function of federal statutory law.  Under one of these jurisdictional statutes, 28 U.S.C. § 1332, federal district courts have original jurisdiction over class actions filed in state courts if the amount in controversy exceeds $5 million, if any member of the class is a citizen of a different state from any defendant, and if the number of proposed class members is 100 or more, though a district court can and in some circumstances must decline to exercise that jurisdiction.  *See id.* § 1332(d)(1)–(5).  Colonial Penn has alleged that this case meets each of these requirements.  (Doc. 1 at 3–8).  Ms. Homan does not argue otherwise, and there is no reason to suspect that this Court should or must decline to exercise its jurisdiction under § 1332(d)(3) or (4).

But beyond these statutes, the Constitution imposes a number of additional and independent limits on the federal courts' judicial power.  In this case, the most relevant of these limits are those the Supreme Court has inferred from Article III, Section 2, which refers to "Cases" and "Controversies."  There is no case and no controversy, for example, if there is no longer any "live" dispute to resolve, *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citations and quotation marks omitted), or if a claim is not "ripe" because it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations and quotation marks omitted).  The Supreme Court has also inferred from the Constitution's references to cases and controversies that plaintiffs must have "standing" to sue.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  More specifically, plaintiffs must show they have sustained an "injury in fact" that is "concrete, particularized, and actual or imminent," that this injury is "fairly traceable" to the defendant's actions, and that a "favorable ruling" would redress their injury.  *Id.* (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).  This obligation applies to "each form of relief requested."  *Id.*  When a plaintiff requests an injunction in particular, the Supreme Court has held

7

that a federal court has jurisdiction over the request only if the threat of injury is "actual and imminent, not conjectural or hypothetical." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "Past wrongs" are "insufficient by themselves to grant standing" to pursue injunctive relief. *Id.*

Ms. Homan's dispute with Colonial Penn is live, given her allegations of benefits unjustly withheld, and nothing in her complaint suggests that her UCL claim is unripe. She does contend, however, that there is no true threat of a future harm that might give her standing to seek an injunction in a federal court. (*See, e.g.*, Docs. 31 at 4; 33 at 7.) Her allegations bear out this assertion. She alleges that her husband intended to continue his life insurance coverage but passed away after inadvertently missing a payment, and she alleges that Colonial Penn denied her request for benefits based on its conclusion that her policy had lapsed. (Doc. 1 at 26.) Nothing in the complaint suggests that a similar denial might occur again, so Ms. Homan has no standing to pursue an injunction to prevent one. Other federal district courts within California have reached the same conclusion in similar cases. *See, e.g.*, *Hughes v. Jackson Nat'l Life Ins. Co.*, No. 24-02079, 2025 WL 2433203, at *4 (C.D. Cal. Aug. 22, 2025); *Youssef v. Great Am. Life Ins. Co.*, No. 25-02545, 2025 WL 2265431, at *3 (C.D. Cal. Aug. 7, 2025); *Graciano v. United Fid. Life Ins. Co.*, No. 23-02015, 2024 WL 1135735, at *2–3 (C.D. Cal. Jan. 24, 2024). This Court has no jurisdiction to adjudicate Homan's request for injunctive relief.

But an injunction is not the only remedy Homan requests. She also alleges she is "entitled to a revival of [the] policy" and "equitable restitution," in addition to any "other equitable relief" that might be "available" or that the court might decide is "just and proper." (Doc. 1 at 30–31.) She does not argue that she lacks standing to pursue these remedies, and Colonial Penn contends affirmatively, albeit briefly, that she does. (*See, e.g.*, Docs. 31 at 4–10; 33 at 13.) These other types of equitable relief would likely redress the harm caused by unpaid policy benefits. So at this early stage of the case, when standing depends only on what is alleged, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), this Court has jurisdiction to adjudicate Homan's request for restitution and other equitable relief under the UCL.

Oddly enough, it appears that neither the Supreme Court nor the Ninth Circuit has decided

exactly what a district court can or must do in this situation, i.e., when (1) a plaintiff files a case in a state court, (2) the complaint includes a single state-law claim, (3) the defendant properly removes the case to federal court based on the diversity jurisdiction statute, and (4) the plaintiff has standing to pursue some of the remedies she seeks, but not all of them.  It is clear at least that this Court must do something, even absent any specific request or motion.  "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

There appear to be only two possible courses of action.  *See Davidson*, 889 F.3d at 970 n.6.  The Court could dismiss the request for relief that goes beyond the Court's subject matter jurisdiction.  That partial dismissal would be without prejudice to refiling in a state court.  *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999).  Alternatively, the Court could divide the UCL claim into two pieces—one piece that is tied to Ms. Homan's request for an injunction and another that is not—and remand only the request for injunctive relief.  *Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954, 961 (N.D. Cal. 2015) (remanding only "[t]he portions of plaintiff's claims that seek injunctive relief under the UCL").

It would seem in the end that a partial dismissal without prejudice and a partial remand would lead to the same outcome.  In both situations, two similar cases could be pending simultaneously in state and federal courts, assuming Ms. Homan refiled her UCL claim and injunction request.  *See Davidson*, 889 F.3d at 970 n.6.  This may be one reason why neither the Ninth Circuit nor the Supreme Court has confronted this particular dispute.  And yet Ms. Homan and Colonial Penn debate the propriety of a partial remand quite vigorously.

Section 1447 of Title 28, which sets out post-removal procedures, does include a subsection about what a court must do when "it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).  It states simply that "the case shall be remanded." *Id.*  The Ninth Circuit has interpreted this subsection as imposing a mandatory obligation to remand a removed case rather than to dismiss it, as might otherwise by required under Federal Rule of Civil Procedure 12(h)(3), for example.  *See Polo*, 833 F.3d at 1196–97.  "Remand is the correct remedy

because a failure of federal subject-matter jurisdiction means only that the federal courts have no power to adjudicate the matter." *Id.* at 1196.

Although this reasoning would seem to apply equally to mere portions of a "case," such as a claim or remedy, *see id.* at 1197, neither the Ninth Circuit nor the Supreme Court has decided whether it does. In *Wisconsin Department of Corrections v. Schacht*, the Supreme Court thought it was conceivable that the word "case" in § 1447(c) might refer to "a claim within a case as well as the entire case." 524 U.S. 381, 392 (1998). But it did not decide whether that reading was correct, because the plaintiff had not requested a partial remand. *Id.* In *Lee v. American National Insurance Co.*, the Ninth Circuit was concerned that the federal removal statutes might force a plaintiff to "forfeit an otherwise viable state-law claim because that claim was part of a removed diversity case" but beyond the federal court's power to resolve. 260 F.3d 997, 1007 (9th Cir. 2001). It suggested this result "might militate in favor of remanding, rather than dismissing, nonjusticiable state-law claims." *Id.* But like the plaintiff in *Shacht*, the plaintiff in *Lee* had not sought a partial remand, so the Circuit did not address that alternative. *Id.*

Beyond the removal statute itself, district courts do have some inherent authority to remand state law claims, as the Supreme Court confirmed in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988). This was before federal statutory law expressly granted district courts the authority to exercise supplemental jurisdiction over state law claims, *see* 27 U.S.C. § 1367, so the Supreme Court drew on "the pendent jurisdiction doctrine" of *Mine Workers v. Gibbs*. *See* 484 U.S. at 351 (citing 383 U.S. 715 (1966)). That doctrine was "designed to enable courts to handle cases involving state-law claims in the way that will best accommodate the values of economy, convenience, fairness, and comity." *Id.* In some circumstances, a remand would accommodate these values better than a dismissal. A dismissal might prevent a plaintiff from pursuing otherwise timely claims if the statute of limitations has run while the case was pending in federal court, *see id.* at 351–52, and dismissals can impose needless costs on both the parties and the state courts, *see id.* at 353. The Supreme Court thus concluded that district courts had authority to remand pendent claims in some situations. *See id.* at 351–57.

Today, the result is similar under the supplemental jurisdiction statute. A district court

10

should ordinarily remand a removed claim to state court if it "raises a novel or complex issue of State law," if it "substantially predominates" over the claims within the federal court's original jurisdiction, or if the district court "has dismissed all claims over which it has original jurisdiction." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31–32 (2025) (quoting 28 U.S.C. § 1367(c)). A district court must, in fact, remand a removed case if the plaintiff amends the complaint and omits any claims that were within the district court's original jurisdiction. *See id.* at 43. In that situation, the federal courts have no jurisdiction at all. *See id.* at 43–44.

Finally, although the Ninth Circuit has not taken up the question, it has observed in dicta that a partial remand might be the most appropriate way to dispose of a request for injunctive relief that goes beyond the district court's subject matter jurisdiction. *See Davidson*, 889 F.3d at 970. A dismissal might lead to "anomalies" in a case like this one. *Id.* (quoting *Machlan*, 77 F. Supp. 3d at 961). That is because an injunction is "the primary form of relief" under the UCL. *Id.* (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009) and citing *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955, 960 (2017)). For that reason, if a federal court permitted a defendant to "defeat injunctive relief simply by removing a case from state court," then the federal court would have intruded "into California's interests and laws" and has committed an "unnecessary affront to federal and state comity." *Id.* (quoting *Machlan*, 77 F. Supp. 3d at 961); *see also id.* at 974 (Berzon, J., concurring) ("[A] defendant should not be able to strip a plaintiff of remedies dictated by state law by removing to federal court a case over which there surely is Article III jurisdiction over the liability issues."). The panel also noted that a district court would be "mistaken" to assume that a remand is not an option for correcting a jurisdictional fault. *See id.* at 970 n.6.

Although these observations are not binding, they do persuasively show why a partial remand is the better course than a partial dismissal. Some federal district courts have disagreed, but their decisions are not persuasive. *See, e.g.*, *Cabral*, 2016 WL 1180143, at *2–4; *Mezzadri v. Med. Depot, Inc.*, 113 F. Supp. 3d 1061, 1063–66 (S.D. Cal. 2015); *see also Davidson v. Kimberly-Clark Corp.*, No. 14-1783, 2015 WL 2357088, at *2–4 (N.D. Cal. May 15, 2015).

First, these other courts have expressed the concern that no appellate precedent or federal statute explicitly permits a federal district court to remand a claim over which it has original

11

jurisdiction. *See, e.g.*, *Cabral*, 2016 WL 1180143, at *3; *Mezzadri*, 113 F. Supp. 3d at 1066. These courts did not have the benefit of the Ninth Circuit's observations in *Davidson*, which was decided later. The Supreme Court and the Ninth Circuit have also held that federal district courts have authority to remand claims that were properly filed in or removed to federal court, even in the absence of express statutory authority. *See Carnegie-Mellon*, 484 U.S. at 353–54; *Ruiz*, 153 F.4th at 913–14 (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) and *Kamm v. ITEX Corp.*, 568 F.3d 752, 755 (9th Cir. 2009)).

Second, district courts have hesitated to remand requests for injunctive relief based on their concern that a remand would lead to duplicative, wasteful, or unwieldy litigation. *See, e.g.*, *Cabral*, 2016 WL 1180143, at *3; *Mezzadri*, 113 F. Supp. 3d at 1066. But in none of these cases did these other district courts contend with the fact that both a partial dismissal and a partial remand are likely to lead to the same result in most circumstances: two similar cases pending simultaneously in state and federal courts. True enough, the outcomes might sometimes be different. As the Supreme Court cautioned in *Carnegie-Mellon*, a dismissal (unlike a remand) might prevent a plaintiff from pursuing an otherwise viable injunction in a state court if the statute of limitations expired while the case was winding its way through the federal system. 484 U.S. at 351–52. And as the Ninth Circuit explained in *Davidson*, a dismissal might allow a defendant to cow a plaintiff into submission with implied threats of repeated removals. *See Davidson*, 889 F.3d at 970 n.6. But these are not good reasons to dismiss a claim. They clearly favor a remand.

In any event, duplicative litigation is sometimes the unavoidable consequence of concurrent jurisdiction in a federal system like ours, in which both state and federal courts can hear and resolve similar claims. *See Lee*, 260 F.3d at 1007 (acknowledging that jurisdictional rules can "result in largely duplicative state and federal court proceedings" regardless of "any preference against forcing the plaintiff to split up his case"). For that reason, there are good reasons to doubt that parallel or successive litigation must always result in wasteful duplications of effort. Discovery can be repurposed, for example. *See, e.g.*, *Hubbard v. Nationstar Mortg., LLC*, No. 21-01723, 2024 WL 382367, at *5 (E.D. Cal. Feb. 1, 2024) (remanding state law claim

after observing that "[a]ny discovery that has taken place [in federal court] can be used in a state court proceeding"), *aff'd*, No. 24-821, 2025 WL 485514 (9th Cir. Feb. 13, 2025).  A federal court can also reduce frictions and the duplication of efforts by issuing "appropriate case management and scheduling orders" in consultation with the parties, *Machlan*, 77 F. Supp. 3d at 962.  If these efforts do not fully eliminate the burden of parallel litigation, and if a plaintiff still prefers a partial remand and parallel litigation, the defendant should not be heard to object.  After all, the plaintiff originally sought to litigate her claims in just one forum, i.e., the state court, and it was the defendant's choice to remove the case to the federal court, despite the federal court's more limited subject matter jurisdiction.

On a related note, some defendants have argued that partial remands violate California's "primary rights" doctrine.  *See Cabral*, 2016 WL 12180143, at *3; *Mezzadri*, 113 F. Supp. 3d at 1065.  It is unclear whether any district courts have agreed with these arguments.  *See, e.g.*, *Cabral*, 2016 WL 1180143, at *4 ("[T]he Court is not basing its ruling on the primary rights doctrine but on the common-sense consequences of claim-splitting . . . ."); *Mezzadri*, 114 F. Supp. 3d at 1066 ("Whether Plaintiff may proceed in another fashion [i.e., refiling and litigating in parallel] is not in the purview of this Court and the Court declines to consider the alternatives.").  This Court will not attempt to decide what the primary rights doctrine requires in these circumstances.  It is better for California's own courts to balance the state' primary rights doctrine against its interest in enjoining any unlawful, unfair, or fraudulent business practices that violate the state's UCL.  *Cf. Machlan*, 77 F. Supp. 3d at 961 ("This case was originally filed in a California state court by a California plaintiff on behalf of a putative class of California residents under California's state laws.  A California state court ought to decide whether injunctive relief is appropriate for plaintiff's claims.").

A third concern that has led some district courts to reject partial remands is their unease with the prospect of remanding a remedy rather than a claim or a case.  *See Cabral*, 2016 WL 1180143, at *4; *Mezzadri*, 113 F. Supp. 3d at 1066; *Davidson*, 2015 WL 2357088, at *4 & n.1.  Despite these concerns, none of these courts have actually identified any confusion or problems that have followed a relief-only remand order.  There is, of course, no reason to believe that a

court would actually be remanding a bare remedy anyway, as opposed to both the remedy and the underlying claim. After a remand, a plaintiff would be pursuing the same claim under the UCL in both courts, while seeking different remedies. Nor does a partial remand raise any pressing theoretical concerns. "[S]evering and remanding discrete forms of relief is no less anomalous than separately analyzing forms of relief for the purposes of Article III standing." *Davidson*, 889 F.3d at 974 n.2 (Berzon, J., concurring).

Fourth, some district courts have hesitated to remand class claims that were properly removed to the federal court under CAFA, which was "designed primarily to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009). *See Cabral*, 2016 WL 1180143, at *4. These concerns are not as weighty in this case as they might be in another. Ms. Homan does not propose a national or multi-state class action. And whether or not this action continues as a class action, California law would appear to permit Ms. Homan to pursue a broad injunction benefitting the "general public" in a California court. *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017). Regardless of CAFA, however, this Court must ascertain its own jurisdiction, and it cannot adjudicate a request for injunctive relief like the one that Ms. Homan makes here. As noted, there appear to be only two options when it becomes clear that a plaintiff requests relief that a district court cannot grant—dismiss the request without prejudice or remand it—and both orders would result in parallel litigation, regardless of what CAFA might itself require. This Court cannot set aside the Supreme Court's binding interpretation of the federal judicial power based on its own views of Congress's purposes in adopting the Class Action Fairness Act.

Some district courts have advised plaintiffs to avoid CAFA and the federal system by more carefully circumscribing their class claims. *See Cabral*, 2016 WL 1180143, at *4. But when plaintiffs do attempt to limit their claims, as Ms. Homan has here, they have often prompted charges of manipulative pleading and forum shopping. Colonial Penn, for example, has repeatedly portrayed Ms. Homan's remand motion and this entire case as an unfair or devious attempt to avoid the federal courts. (*See, e.g.*, Docs. 22 at 9–10; 33 at 6–7.) As summarized

14

above, the same attorneys who represent Ms. Homan in this case previously represented Ms. Kelley, whose claims against Colonial Penn ended when a different federal district court enforced a federal precedent that would not be binding in a state court.

If Ms. Homan's efforts to avoid a federal forum count as forum shopping, the same can be said of Colonial Penn's efforts to take advantage of the federal forum. Colonial Penn can argue that a federal court lacks power to grant Ms. Homan an injunction; it cannot make that assertion in a state court. It can argue that this court is bound by the Ninth Circuit's holding in *Small*; it cannot do that in state court. The problem is not manipulation. The problem is the mismatch between what federal and state courts can do: a claim that a plaintiff could pursue in state court may not be one the plaintiff can pursue in this court. A partial remand appears unlikely to have any significant practical downsides in comparison with a partial dismissal, so a partial remand is the superior method for ensuring that this court does not adjudicate Ms. Homan's request for injunctive relief, which it has no power to do. *See, e.g.*, *Hughes v. Jackson Nat'l Life Ins. Co.*, No. 24-02079, 2025 WL 2433203, at *5, 12 (C.D. Cal. Aug. 22, 2025) (remanding UCL claim for injunctive relief while dismissing other claims with leave to amend); *Machlan*, 77 F. Supp. 3d 954 (remanding "[t]he portions of plaintiff's claims that seek injunctive relief under the UCL").

## EQUITABLE JURISDICTION

This conclusion leaves one question unanswered: what to do with the claims over which this court does have subject matter jurisdiction?

As summarized in the background section above, Ms. Homan is pursuing equitable remedies only, but she does not allege that she has no adequate remedy at law, as is ordinary required of plaintiff who seeks equitable relief in a federal court. The absence of these allegations would normally deprive this court of "equitable jurisdiction" over her claims and justify a remand of the case as a whole. The Ninth Circuit has held, however, that a defendant in this situation "should be given the opportunity to waive the adequate-remedy-at-law impediment," i.e., to waive an argument based on this court's equitable jurisdiction before the court issues a remand order. *Ruiz*, 153 F.4th at 918. Colonial Penn has offered to make the necessary waiver. Ms. Homan urges the Court not to accept it.

The Ninth Circuit did not consider in *Ruiz* whether a district court has discretion to reject a defendant's waiver of any arguments based on the court's equitable jurisdiction. A federal district court probably does have that discretion. (*See* Doc. 30 at 10.) The parties do not identify any case, however, in which any court has exercised that discretion or even considered its bounds, and the Court is aware of none. With that said, this is hardly an unprecedented situation. There is a well-known suite of rules that federal courts have developed over the years to make principled decisions about what to do when two similar cases are pending in both state and federal courts: federal abstention doctrines. *See Quckenbush*, 517 U.S. at 716–17 (citing, among other authorities, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989); *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976); and *Younger v. Harris*, 401 U.S. 37 (1971)). Rather than relying on an untested and unprecedented doctrine of discretionary remand, the Court will rely instead on these well-known abstention rules.

Those rules are narrow. *See, e.g.*, *Rajabian v. Mercedes-Benz USA, LLC*, 154 F.4th 1145, 1152 (9th Cir. 2025) (describing the *Colorado River* rule as a "narrow exception" (citation and quotation marks omitted)). That is because "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush*, 491 U.S. at 716. Homan has not demonstrated that this Court should abstain from exercising its jurisdiction over her equitable claim. *See, e.g.*, *Rajabian*, 154 F.4th at 1153 (setting out legal test for *Colorado River* abstention). The Court will therefore accept Colonial Penn's waiver, but without prejudice to a future motion to remand or stay under any applicable abstention doctrine.

///

///

///

///

///

///

///

///

16

**CONCLUSION**

For these reasons, the Court **ADOPTS IN PART** the Findings and Recommendations (Doc. 30), as explained above. The motion to remand (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART**: the request for injunctive relief under the UCL is **REMANDED**, but the remainder of the UCL claim, including the request for restitution and other equitable relief, **REMAINS PENDING** in this Court.

IT IS SO ORDERED.

Dated:   **April 14, 2026**

UNITED STATES DISTRICT JUDGE

17